UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA D., | Case No. CV 18-5157-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**<u>INTRODUCTION</u>**

On June 11, 2018, plaintiff Natasha D. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step two when he found plaintiff only

suffered from a severe impairment in one knee; (2) whether the ALJ erred at step two when he failed to find plaintiff suffered from a severe mental impairment; and (3) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ committed a typographical error when he failed to specify which of plaintiff's knees had a severe impairment, erred at step two when he failed to find plaintiff suffered from a severe mental impairment, and his RFC determination was not supported by substantial evidence. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty years old on her alleged disability onset date, is a high school graduate and has phlebotomy and medical assistant certificates. AR at 50, 332. Plaintiff has past relevant work as a phlebotomist, administrative clerk, and home care provider. *Id*. at 47.

On March 18, 2014, plaintiff filed an application for a period of disability and DIB due to bilateral knee pain, lower back pain, and depression. *Id*. at 50. The application was denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 74-77, 83-90.

On November 9, 2016, plaintiff appeared and testified at a hearing before the ALJ. *Id*. at 36-49. The ALJ also heard testimony from Carmen Roman, a vocational expert. *Id*. at 47-48. On December 7, 2016, the ALJ denied plaintiff's claim for benefits. *Id*. at 24-31.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since September 1, 2013, the alleged onset date. *Id.* at 26.

At step two, the ALJ found plaintiff suffered from the severe impairment of osteoarthritis of her knee. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could occasionally climb, crawl, and kneel, and could not work on unprotected heights or dangerous machinery. *Id*. at 27.

The ALJ found, at step four, that plaintiff was capable of performing her past relevant work as phlebotomist and administrative clerk. *Id.* at 30. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 31.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

///
///

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

# III.
# **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

///

# IV.

# DISCUSSION

## A. The ALJ's Failure to Provide More Specificity Regarding Plaintiff's Knee Impairment at Step Two Was a Typographical Error

Plaintiff first contends the ALJ erred at step two because he determined plaintiff suffered from the severe impairment of osteoarthritis in only one knee. P. Mem. at 2-5. Plaintiff asserts that the ALJ's step two finding was ambiguous because he failed to specify which knee had osteoarthritis, but regardless of which knee the ALJ intended to identify, the ALJ erred because the evidence shows plaintiff had a severe impairment in both knees. *See id.*

Respondent acknowledges substantial evidence supports a finding of a severe impairment in both knees and contends the ALJ's error was simply a scrivener's error and harmless. *See* D. Mem. at 1-3. The court agrees the step two error was a typographical error. The ALJ, at subsequent steps, discussed plaintiff's statements and the objective medical evidence concerning both of plaintiff's knees. The ALJ recognized the medical records indicate plaintiff complained about and sought treatment for pain in both of her knees, and the objective medical evidence reflects plaintiff suffered from, among other things, lateral tilt of the patella and osteoarthritic changes in both knees. *See, e.g., id.* at 317, 319-20. Thus, it appears that the ALJ's finding that plaintiff suffered from osteoarthritis of her "knee" as opposed to "knees" was simply a typographical error.

Moreover, an ALJ's step two error may be harmless if step two was decided in a claimant's favor in that the ALJ continued to subsequent steps. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error the ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). Here, the ALJ

5

considered the impairment in both knees in his RFC determination.  Thus, to the extent plaintiff is arguing the ALJ erred at step two for his failure to specify he suffered severe knee impairments bilaterally, the error was harmless.

Nevertheless, although the ALJ committed a harmless typographical error at step two and considered both knee impairments in his RFC determination, his RFC determination, as discussed further below, was not supported by substantial evidence.

## B. The ALJ Erred at Step Two When He Failed to Find Plaintiff Suffered From a Severe Mental Impairment

Plaintiff also argues the ALJ erred at step two when he failed to find plaintiff suffered from a severe mental impairment.  P. Mem. at 5-8.  Specifically, plaintiff asserts the ALJ's determination that plaintiff suffered from moderate limitations in multiple functional areas necessitated a finding of a severe impairment.  *See id*.

At step two, the Commissioner considers the severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).[2]  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Id*. (citation and quotation marks omitted).

With regard to mental impairments, the regulations provide a "special technique" to evaluate their severity.  20 C.F.R. § 404.1520a(a).  An ALJ first evaluates the medical evidence to determine whether a claimant has a medically determinable impairment.  20 C.F.R. § 404.1520a(b)(1).  The ALJ then rates the degree of functional limitations in four functional areas – activities of daily living;

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

6

social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(1)-(3). For the first three functional areas, the ALJ uses a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the degree of limitations as none or mild in the first three functional areas and none in the fourth, she or he will generally conclude the impairment is not severe unless the evidence indicates there is more than a minimal limitation in claimant's ability to do work. 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ determined plaintiff's mental impairments caused mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. AR at 27. Nevertheless, the ALJ found plaintiff's mental impairment was not severe. *See id*. at 26. This step two determination finding was incongruent with the ALJ's findings that plaintiff's mental impairments caused moderate limitations in two functional areas.

As stated, a finding of only mild functional limitations generally results in the conclusion that the claimant does not suffer from a severe mental impairment. *See* 20 C.F.R. § 404.1520a(d)(1). But "[m]oderate limitations are sufficient to meet the 'severe impairment' standard." *Holloway v. Berryhill*, 2017 WL 5508512, at *2 (C.D. Cal. Nov. 16, 2017); *see, e.g., Cambaliza v. Colvin*, 2014 WL 2009105, at *1 (C.D. Cal. May 15, 2014) (the regulations direct an ALJ to find a mental impairment severe when a claimant has moderate functional limitations); *Vargas v. Astrue*, 2010 WL 3418890, at *6 (C.D. Cal. Aug. 25, 2010) (findings of moderate limitations may amount to more than a minimal effect on a plaintiff's ability to perform basic work activities); *but see Koehler v. Astrue*, 283 Fed. Appx. 443, 445 (9th Cir. 2008) (noting that the regulations do not mandate that a diagnosis by one physician of a moderate limitation in the ability to respond to

7

changes in the workplace must result in a finding of a severe mental impairment). As such, the ALJ should have found plaintiff suffered from a severe mental impairment.

Moreover, even if an ALJ could reach a non-severe mental impairment determination in spite of a claimant's moderate functional limitations, the ALJ's determination was not supported by substantial evidence in this instance. In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b). The ALJ purported to base his opinion on treatment records, plaintiff's statements, and the consultative examiner's report, but there was no consultative examiner's report in the record. *See* AR at 27. To the extent the ALJ relied on the opinions of the State Agency physicians at step two, the State Agency physicians' opinions that plaintiff did not have a serious medically determinable impairment were not substantial evidence. *See id*. at 30, 53, 64; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006) (the opinion of a non-examining physician alone cannot constitute substantial evidence). Both physicians concluded plaintiff did not suffer from a serious mental impairment in 2014 because she was not being treated for one. *See id*. at 53, 64; *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness."). But the medical records indicate plaintiff began treatment in 2015. *See id*. at 329-55. Physicians observed plaintiff, among other things, was anxious, was guarded, and had a sad affect, and treated her with medication and therapy. *See id*.

Accordingly, the ALJ erred at step two when he found plaintiff did not suffer from a severe mental impairment. The ALJ's finding was inconsistent with his own determination that plaintiff suffered from moderate limitations in two

8

functional areas and was unsupported by the medical evidence. As discussed above, such a step two error may be harmless where, as here, step two was otherwise decided in plaintiff's favor, and where the impairment found not severe is nonetheless considered in the RFC determination. *See Burch*, 400 F.3d at 682; *Lewis*, 498 F.3d at 911. But here it is not clear the ALJ properly considered plaintiff's mental impairments in determining her RFC (*see* AR at 27), and therefore the court cannot say the step two error was harmless.

## C. **The ALJ's RFC Determination Was Not Supported by Substantial Evidence**

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; see Social Security Ruling ("SSR")[3] 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ here determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could occasionally climb, crawl, and kneel, and could not work on unprotected heights or dangerous machinery. AR at 27. Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not address her walking and standing limitations. P. Mem. at 8-9.

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

In reaching his RFC determination, the ALJ gave great weight to the opinions of the State Agency physicians, relied on the objective medical evidence, and discounted plaintiff's subjective complaints. AR at 30. The only opinions in the record are from the State Agency physicians on initial review and upon reconsideration. *See id.* at 53-56; 64-67. Both State Agency physicians reviewed plaintiff's medical records as of May 2014. *See id.* From the review of plaintiff's records, they determined plaintiff had the RFC, in relevant part, to: lift and/or carry ten pounds frequently and twenty pounds occasionally; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and occasionally kneel, crouch, and crawl. *See id.* at 55-57; 65-66.

Although the ALJ did not expressly adopt the State Agency physicians' opined standing and walking limitations, plaintiff's RFC as determined by the ALJ is consistent with their opinions. In particular, light work is defined as work that, inter alia:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b). A Social Security Ruling further sets forth the relationship between the lifting or carrying requirement and standing or walking, providing that frequent lifting or carrying "requires being on one's feet up to two-thirds of a workday," which translates to "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Accordingly, in determining that plaintiff could perform light work, the ALJ

effectively adopted the State Agency physicians' opined standing and walking limitations, as well as their opined lifting and carrying limitations.

An ALJ may rely on the opinions of State Agency physicians, but the opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark*, 454 F.3d at 1066 n.2; *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Here, the ALJ determined the opinions of the State Agency physicians were consistent with plaintiff's activities of daily living and supported by the medical evidence. AR at 30. The court disagrees in part.

First, the State Agency opinions were not fully consistent with plaintiff's activities of daily living. In May 2014, plaintiff reported she primarily stayed home in a supine or sitting position, sometimes needed help with bathing, spent 10-15 minutes preparing meals consisting of drinks and frozen foods, needed help with housework, shopped, drove a car, and could not play ball or chase her children.[4] *See* AR at 194-201. She explained her knee pains affected her ability to climb stairs and walk more than half a block. *See id*. at 199. At the hearing, plaintiff testified she stayed home most of the time and took care of her children. *See id*. at 45-46. Plaintiff's then thirteen-year-old daughter helped with caring for plaintiff's younger child, cooking, reaching for things, taking out trash, and dishes. *See id*. Thus, while plaintiff's daily activities were arguably consistent with the physicians' postural limitations, they were not necessarily consistent with the opined lifting, carrying, standing, and walking limitations. There is no indication that plaintiff engaged in anywhere near the amount of walking and standing the physicians opined she was capable of.

---

[4] Although the ALJ discounted plaintiff's subjective complaints, he appeared to accept plaintiff's account of her daily activities.

11

Similarly, the medical evidence only supported the opinions of the State Agency physicians in part. The medical evidence reviewed by the State Agency physicians, which reflected mostly normal findings, supported their opinions. *See* AR at 255-58, 279-80. Nevertheless, it cannot be said that the physicians' opinions were supported by substantial evidence because the State Agency physicians only reviewed plaintiff's medical records up to May 2014. *See id*. at 55-56, 65-66. The medical records subsequent to the State Agency opinions suggest plaintiff's knee impairments either were more severe than the State Agency physicians opined or increased in severity. In addition to plaintiff's continued subjective complaints, examinations reflected plaintiff had an antalgic gait, decreased range of motion and strength in the lower extremities, tenderness to palpation, and instability of the knee cap. *See id*. at 319, 374. Imaging reflected evidence of a lateral tilt of the patella, fat pad impingement, and osteoarthritic changes. *See id.* at 319, 321. Most important, narcotic pain medications and cortisone injections did not sufficiently alleviate the pain and the treating physician determined plaintiff required surgery. *See id*. at 317-19, 389. Therefore, the medical records subsequent to the State Agency physicians' opinions do not support their opined standing and walking limitations.

Accordingly, the ALJ's RFC determination, with respect to walking and standing, is not supported by substantial evidence.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful

purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required. On remand, the ALJ shall reevaluate the evidence at step two and correct any typographical errors. The ALJ shall obtain, if necessary, additional information and clarification regarding plaintiff's limitations, reassess plaintiff's RFC in light of all the medical evidence and opinions, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

///

///

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 20, 2019

SHERI PYM
United States Magistrate Judge